UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERIKA MATOS,

    Plaintiff,

v.                                                        Case No. 8:24-cv-2952-CPT

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

    Defendant.
_____/

## **O R D E R**

The Plaintiff seeks judicial review of the Commissioner's decision denying her application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB).  For the reasons discussed below, the Commissioner's decision is reversed, and the case is remanded.

### I.

The Plaintiff was born in 1978, has an eighth-grade education, and has past relevant work experience as a cashier, laborer, retail associate, recreational coach, and customer service employee.  (R. 508, 572, 583).  In April 2021, the Plaintiff applied for SSI and DIB, alleging disability as of October 2020 due to fibromyalgia, lupus, depression, anxiety, bipolar disorder, personality disorder, carpal tunnel syndrome,

and post-traumatic stress disorder. (R. 516, 522); *see* (Doc. 22 at 1). The Social Security Administration (SSA) denied the Plaintiff's applications both initially and on reconsideration. (R. 240, 245, 262–63, 270–71); *see* (Doc. 22 at 1).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in February 2023. (R. 206). The Plaintiff was represented by two non-attorneys at that proceeding and testified on her own behalf. (R. 206, 212). A vocational expert (VE) also testified. (R. 206).

In a decision issued in March 2023, the ALJ determined that the Plaintiff (1) had not engaged in any substantial gainful activity during the period since her alleged onset date in October 2020; (2) had the severe impairments of fibromyalgia, lupus, depression, bipolar disorder, Sjogren's syndrome, carpal tunnel syndrome, and post-traumatic stress disorder; (3) did not, however, have an impairment or combination of impairments that met or medically equaled any of the listings;[1] (4) had the residual functional capacity (RFC) to perform light work subject to various postural, manipulative, and environmental restrictions; and (5) based on the VE's testimony, could engage in jobs that exist in significant numbers in the national economy. (R. 206–19). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 219).

---

[1] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(iii). When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits. *See id.*; *see also Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

The Plaintiff sought review of the ALJ's decision by the Appeals Council, which remanded the matter to the ALJ so that he could more thoroughly evaluate physician opinion evidence and assess the Plaintiff's fibromyalgia in accordance with Social Security Ruling (SSR) 12-2p. (R. 229–30). Following another hearing, the ALJ issued a decision in February 2024, in which he again concluded that the Plaintiff was not disabled. (R. 24).

The Appeals Council denied the Plaintiff's subsequent request for review. (R. 1). Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

## II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A), 20 C.F.R. §§ 404.1505(a), 416.905(a).[2]   A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine whether a claimant is disabled, the Social Security Regulations prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[3] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a medically determinable impairment that is severe; (3) has a severe medically determinable impairment that meets or equals one of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)). Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that she cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision disposing of the claimant's disability application after a hearing. 42 U.S.C. § 405(g).

---

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

Judicial review is confined to determining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citations omitted). In evaluating whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations. *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). While a court will defer to the Commissioner's factual findings, it will not defer to his legal conclusions. *Viverette*, 13 F.4th at 1313–14 (citation omitted); *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

## III.

The Plaintiff's sole challenge on appeal is that the ALJ erred at step four by not considering the Plaintiff's subjective complaints stemming from her fibromyalgia as required by SSR 12-2p. (Doc. 22). The Commissioner counters that the ALJ did not commit any legal error and that the ALJ's factual findings are supported by substantial evidence. (Doc. 24). After careful review of the parties' submissions and the record, the Court finds that the Plaintiff's challenge is well-founded and warrants remand.

A.

As noted above, the ALJ's task at step four is to determine a claimant's RFC and her ability to perform her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To do so, an ALJ must decide given all of the relevant evidence before him what a claimant can do in a work setting despite any physical or mental restrictions caused by her medically determinable impairments and related symptoms. *See id.* §§ 404.1545(a)(1), 416.945(a)(1). In making this assessment, the ALJ must review the medical opinions of record, the claimant's medically determinable impairments, the total limiting effects of each impairment, and the claimant's subjective symptoms. *See id.* §§ 404.1520(e), 404.1545(a)(3), 416.920(e), 416.945(a)(3); *see also Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).

The evaluation of a claimant's subjective complaints is governed by the Eleventh Circuit's "pain standard." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam). Under this standard, a claimant must show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from the condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Id.* (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam)).

If a claimant meets the pain standard, the ALJ must then assess the intensity and persistence of the claimant's symptoms to determine how they restrict her capacity to work. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The considerations relevant to

this inquiry include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms; (5) treatment (other than medication) the claimant receives or has received for relief of her pain or other symptoms; (6) any measures the claimant uses or has used to relieve her pain or other symptoms; and (7) other factors concerning the claimant's functional limitations due to pain or other symptoms. *Id.*

After evaluating "a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed [on appeal] for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984) (per curiam)). A reviewing court will not disturb a clearly articulated credibility finding made by an ALJ that is buttressed by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

B.

As referenced earlier, the Plaintiff's challenge here centers around the ALJ's assessment at step four of the Plaintiff's fibromyalgia-related symptoms. SSR 12-2p defines fibromyalgia as "a complex medical condition [that is] characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissue that has persisted for at least [three] months." 2012 WL 3104869, at *2 (July 25, 2012). As the Eleventh Circuit has noted, fibromyalgia is a difficult malady to evaluate because it is often unaccompanied by any "'medical or laboratory signs and is generally diagnosed

7

mostly on a[n] individual's described symptoms.'" *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 863 (11th Cir. 2017) (per curiam) (quoting *Moore*, 405 F.3d at 1211); *see also Reliford v. Barnhart*, 444 F. Supp. 2d. 1182, 1186–87 (N.D. Ala. 2006) ("[Fibromyalgia is] a common, but elusive and mysterious, disease[.] . . . Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia.") (internal quotation marks and citation omitted).

The Eleventh Circuit highlighted this problem in *Somogy v. Comm'r of Soc. Sec.*, remarking that the "hallmark" of fibromyalgia is "a lack of objective evidence." 366 F. App'x 56, 63 (11th Cir. 2010) (per curiam) (quoting *Moore*, 405 F.3d at 1211). One of the decisions the *Somogy* court cited to buttress this acknowledgment was *Green-Younger v. Barnhart*, in which the Second Circuit pointed out that because of the subjective nature of fibromyalgia, "physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Green-Younger*, 335 F.3d 99, 108–09 (2d Cir. 2003) (quotation omitted). Consistent with this observation, the Eleventh Circuit in *Somogy* instructed that "[g]iven the nature of fibromyalgia, a claimant's subjective complaints of pain are often the only means of determining the severity of [the claimant's] condition and the functional limitations caused thereby." 366 F. App'x at 64 (citing *Green-Younger*, 335 F.3d at 107).

8

Courts within this Circuit have taken heed of the Eleventh Circuit's teachings in *Somogy*, recognizing that there is typically a paucity of objective evidence where claimants have fibromyalgia. *See, e.g.*, *Smith v. Astrue*, 2012 WL 2912658, at *5 n.3 (M.D. Fla. June 25, 2012) (stating that joint and muscle examinations of an individual with fibromyalgia generally produce normal findings) (citing HARRISON'S PRINCIPLES OF INTERNAL MEDICINE 1706–07 (Kurt J. Isselbacher et al., eds., 13th ed. 1994)), *report and recommendation adopted*, 2012 WL 2912657 (M.D. Fla. July 16, 2012). Indeed, at least one other court in this District has found that an "[u]ndue emphasis on the lack of objective findings to substantiate a claimant's fibromyalgia-related reports constitutes error under well-established case law of this Circuit." *Francis v. Saul*, 2020 WL 1227589, at *4 (M.D. Fla. Mar. 13, 2020) (citing *Witherell v. Berryhill*, 2019 WL 1397927, at *4 (M.D. Fla. Mar. 28, 2019)).

In light of the challenges posed in assessing disability claims involving fibromyalgia, SSR 12-2p sets forth guidance on how an ALJ should analyze this condition in carrying out the five-step sequential evaluation process. 2012 WL 3104869, at *1, 5–6. Pertinent here, SSR 12-2p advises that an ALJ should "consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a [claimant] may have 'bad days and good days.'" *Id.* at 6. Although not explicitly reflected in SSR 12-2p, that ruling has been interpreted to obligate an ALJ at step four to employ the same pain standard as the one described above. *See Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 987–88 (11th Cir. 2015) (per curiam) (observing that the ALJ is to utilize the same pain standard "to evaluate

9

a claimant's fibromyalgia" as he would in assessing a claimant's pain or other subjective symptoms) (citing SSR 12-2p, 2012 WL 3104869, at *2).

In his February 2024 decision here, the ALJ stated at step four that the Plaintiff had been diagnosed with fibromyalgia and then summarized all the symptoms she was experiencing, including those related to her fibromyalgia. (R. 17–22). In particular, the ALJ noted:

> . . . [With respect to] her physical impairments, the claimant testified that she suffers from stiffness in her neck and has trouble turning her neck side to side. She also testified that she has lupus and suffers from fatigue all the time. The claimant also testified that she suffers from fibromyalgia and has pain throughout her body that causes her to move more slowly than normal. Due to her pain, the claimant testified that she is not able to stay in one position for extended periods. More specifically, she testified that she has trouble standing or walking for more than [ten] minutes before needing a break. She also testified that she has difficulty bending, reaching overhead, and difficulty gripping with both hands.

(R. 17).

The ALJ ultimately determined that while the Plaintiff's impairments "could reasonably be expected to cause [her] alleged symptoms," the Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [those] symptoms [were] not entirely consistent" with the information and documentation before him. (R. 18). To bolster this determination, the ALJ identified various forms of objective evidence in the record which he maintained did not comport with the Plaintiff's subjective complaints. (R. 18–22).

The problem with the ALJ's analysis, as the Plaintiff points out, is that the ALJ essentially lumped together the entirety of the Plaintiff's symptoms stemming from all her conditions in arriving at his findings. (R. 17–22). Because the ALJ proceeded in such a broad-based fashion, it is not clear whether he gave appropriate consideration to the fact that the Plaintiff's fibromyalgia, by virtue of its unique nature, caused her pain and discomfort where the objective evidence was seemingly lacking. *Id.* As another court aptly explained when confronted with an analogous circumstance:

> [Although the claimant] . . . alleged disability due to various impairments, the ALJ failed to expressly treat fibromyalgia any differently, as directed by SSR 12-2p. . . . [T]he ALJ d[id] not account for SSR 12-2p's recognition that physical examinations will usually yield normal results . . . and that [a]ny inconsistencies [will be] less remarkable when viewed in light of the longitudinal record and when considering the fact that the symptoms of fibromyalgia can wax and wane so that a person may have good days and bad days.

*Vazquez v. Comm'r of Soc. Sec.*, 2022 WL 909754, at *7 (M.D. Fla. Mar. 29, 2022) (internal quotation marks and citations omitted).[4] The court's observation in *Vazquez* applies equally here.

Given the ALJ's generalized approach to the Plaintiff's symptoms, one which lacked sufficient attention to the Plaintiff's fibromyalgia and the longitudinal record of that affliction, the Court cannot properly assess whether the ALJ's disability

---

[4] *See also Francis*, 2020 WL 1227589, at *3 (finding that the "ALJ's considerations of the objective evidence . . . [did] not comport with the fact that physical examinations for person[s] with fibromyalgia will usually yield normal results," and that it is in fact "common in cases involving fibromyalgia to find evidence of such examinations and testing in order to rule out other disorders that could account for the person[s'] symptoms and signs") (citation omitted).

determination is supported by substantial evidence. *See Itani v. Comm'r of Soc. Sec.*, 2023 WL 2386814, at *6 (M.D. Fla. Mar. 7, 2023) (finding that the ALJ's disability decision concerning the claimant's fibromyalgia-related symptoms was not properly substantiated because the ALJ did not discuss the "unique nature of fibromyalgia," the dearth of objective evidence, "its other symptoms[,] such as fatigue and widespread pain, or recognize that a claimant's subjective complaints may be the only means of determining its severity and the functional limitations she experiences"); *Atkins v. Comm'r of Soc. Sec.*, 2019 WL 6838512, at *3–5 (M.D. Fla. Dec. 16, 2019) (rejecting the ALJ's disability determination because the ALJ failed to consider the claimant's fibromyalgia according to the criteria set forth in SSR 12-2). As a result, reversal and remand is required. *See Dial v. Comm'r of Soc. Sec.*, 2023 WL 416191, at *5 (M.D. Fla. Jan. 26, 2023) (remanding the action where the ALJ "did not adequately consider . . . SSR 12-2p's framework . . . when discounting [the claimant's] statements regarding intensity, persistence, and limiting effects of her [fibromyalgia-related] symptoms"); *Francis*, 2020 WL 1227589, at *4 (same); *Catalan v. Berryhill*, 2018 WL 4055340, at *3–4 (M.D. Fla. Aug. 9, 2018) (deeming reversal and remand appropriate where the ALJ neglected to apply SSR 12-2p's "critical framework" in analyzing the claimant's fibromyalgia at step four), *report and recommendation adopted*, 2018 WL 4052276 (M.D. Fla. Aug. 24, 2018); *Karan M. L. v. Bisignano*, 2025 WL 3301555, at *6 (N.D. Ga. Aug. 29, 2025) (determining that remand was necessary where the "ALJ failed to explain how the criteria from SSR 12-2p was applied in evaluating a claimant's fibromyalgia") (collecting cases).

In an attempt to avoid this outcome, the Commissioner asserts that "the ALJ specifically acknowledged Plaintiff's purported symptoms from fibromyalgia." (Doc. 24 at 6). This contention, along with the decisions the Commissioner relies upon to support his position, miss the mark. The fatal flaw in the ALJ's analysis at step four is not that he failed to mention the Plaintiff's subjective complaints associated with her fibromyalgia, but that he evaluated those and all the Plaintiff's other symptoms in the aggregate without proper regard for the dictates of SSR 12-2p. *See Karan*, 2025 WL 3301555, at *6; *Vazquez*, 2022 WL 909754, at *7; *Atkins*, 2019 WL 6838512, at *4.

IV.

Based upon the foregoing, it is hereby ORDERED:

1.     The Commissioner's decision is reversed, and the case is remanded for further proceedings before the Commissioner consistent with this Order. On remand, the ALJ must take into account all the record evidence in accordance with the governing case law and the applicable regulatory provisions in assessing the Plaintiff's impairments. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983).

2.     The Clerk of Court is directed to enter Judgment in the Plaintiff's favor and to close the case.

SO ORDERED in Tampa, Florida, this 30th day of March 2026.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record

13